**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORTY MYERS DIVISION**

UNITED STATES OF AMERICA,
for the use and benefit of
THYSSENKRUPP ELEVATOR
CORPORATION,

     Plaintiff,                                  Case No.

vs.

BES DESIGN/BUILD, LLC and
AEGIS SECURITY INSURANCE
COMPANY,

     Defendants.

_____/

## COMPLAINT

Plaintiff, UNITED STATES OF AMERICA, for the use and benefit of THYSSENKRUPP ELEVATOR CORPORATION (hereafter referred to as "Thyssenkrupp"), sues Defendants, BES DESIGN/BUILD, LLC (hereafter referred to as "BES Design") and AEGIS SECURITY INSURANCE COMPANY (hereafter referred to as "Aegis"), and says:

## PARTIES

1.     Thyssenkrupp, the use Plaintiff in this action, is a Delaware corporation that maintains its principal place of business located in Alpharetta, Fulton County, Georgia.

2.     Defendant BES Design is an Alabama limited liability company that is authorized to transact business in the state of Florida and has its principal place of business in Fairhope, Baldwin County, Alabama.

3.      Defendant Aegis is a Pennsylvania corporation that is authorized to engage in the business of insurance and surety bonds in the state of Florida.

## JURISDICTION AND VENUE

4.      This action arises under the Miller Act, 40 U.S.C.A. §§ 3131 to 3133, and, accordingly, this Court has subject matter jurisdiction under 28 U.S.C.A. § 1331 as an action arising under the laws of the United States.

5.      Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in Lee County, Florida and the Defendants failed to make the payments due to Thyssenkrupp in Lee County, Florida.

## COUNT ONE – CAUSE OF ACTION UNDER THE MILLER ACT, 40 U.S.C. § 3131

6.      Thyssenkrupp repeats and realleges the allegations contained in paragraphs 1 through 5, as if fully set forth herein.

7.      On or about September 16, 2016, BES Design entered into a contract with the United States of America as the Prime Contractor for the United States Marshalls Service Project No. 16528, "Marshals Service Holding Cells Project" under Contract Number VA246-16-C-0065 (hereafter referred to as the "Prime Contract"), located at the United States Courthouse in Ft. Myers, Lee County, Florida (hereafter referred to as the "Project"), which contract exceeds the sum of $100,000.00.  Thyssenkrupp does not have a copy of that Prime Contract, but upon information and belief, both BES Design and Aegis have a copy thereof and any amendments or additions thereto.

8.      Aegis was, at all times material hereto, the surety for the Project, and has furnished to the United States a Payment Bond and Performance Bond under the Prime Contract and pursuant

2

to the Miller Act.  A copy of the Payment Bond and the Performance Bond are attached hereto as Exhibits "A" and "B" respectively and made a part hereof.

9.      On or about January 5, 2018, Thyssenkrupp, as Subcontractor, and BES Design, as Prime Contractor, entered into a written Subcontract agreement, a copy of which is attached hereto as Exhibit "C" and made a part hereof (hereafter referred to as the "Subcontract"), to furnish and install a Geared Traction Passenger Elevator for the Project (hereafter referred to as the "Work"), which is a portion of and within the scope of the work contemplated by the Prime Contract between BES Design and the United States.

10.     Thyssenkrupp has performed all of the Work required of it under the Subcontract, including miscellaneous additional work requested by BES Design, and has completed its duties and obligations thereunder and has demanded payment which BES Design has failed and refused to make.

11.     To date BES Design has paid Thyssenkrupp only the sum of $110,580.60, leaving a balance due of $77,370.40, excluding interest, costs, and attorney's fees.

12.     Despite demands by Thyssenkrupp, BES Design has failed, refused, and neglected to pay the remaining balance of $77,370.40, excluding interest, costs, and attorney's fees, or any portion of it to Thyssenkrupp.

13.     Thyssenkrupp last furnished any services, labor, or materials on December 5, 2019.

14.     Thyssenkrupp has retained the undersigned attorneys and has agreed to pay them a reasonable fee.

15.     All conditions precedent to the relief demanded herein have occurred or been performed.

3

WHEREFORE, the United States of America, for the use and benefit of THYSSENKRUPP ELEVATOR CORPORATION, demands judgment against the Defendants BES DESIGN/BUILD, LLC and AEGIS SECURITY INSURANCE COMPANY, jointly and severally, for damages, interest, costs, attorney's fees, and for such other relief as the Court may deem necessary, just, and proper.

## COUNT II – CAUSE OF ACTION FOR BREACH OF CONTRACT

16.     Thyssenkrupp repeats and realleges the allegations contained in paragraphs 1,2, 5, 9 through 13, as if fully set forth herein.

17.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs and is between citizens of different states.

18.     Thyssenkrupp has fully performed all duties and obligations required by the Subcontract.

19.     By its failure to pay Thyssenkrupp the sums due under the Subcontract, BES Design has committed a material breach thereof.

20.     As a result of BES Design's breach of contract, Thyssenkrupp has suffered damages in the sum of $77,370.40, for all of which BES Design is liable.

21.     Thyssenkrupp has retained the undersigned attorneys and has agreed to pay them a reasonable fee for their services in this action. Pursuant to Article 15.4 of the Subcontract, BES Design is liable for the attorney's fees that Thyssenkrupp may incur in this action.

22.     All conditions precedent to the relief demanded herein have occurred or been performed.

4

WHEREFORE, THYSSENKRUPP ELEVATOR CORPORATION, demands judgment against BES DESIGN/BUILD, LLC for the sum of $77, 370.40 plus interest, together with an award of attorneys' fees and costs, and for such other relief as the Court may deem necessary, just, and proper.

Date: December 2, 2020.

 /s/ Yusuf E. Haidermota
Yusuf E. Haidermota, Esq.
Florida Bar No. 55941
KASS SHULER, P.A.
P.O. Box 800
Tampa, Florida  33601-0800
Tel:   (813) 229-0900 Ext. 1472
Fax:  (813) 229-3323
Primary: yhaidermota@kasslaw.com
Secondary: eserviceyeh@kasslaw.com
Attorneys for Plaintiff

# EXHIBIT "A"

Bond No.  B10 028 900

| PAYMENT BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br><br>September 20, 2016 | OMB Control Number: 9000-0045<br>Expiration Date: 7/31/2019 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995.  You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number.  The OMB control number for this collection is 9000-0045.  We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions.  Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to:  General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC  20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| BES Design/Build, LLC<br>766 Middle Street<br>Fairhope,  AL   36532 | ☐ INDIVIDUAL  ☐ PARTNERSHIP  ☐ JOINT VENTURE<br>☐ CORPORATION  ☒ OTHER (Specify)  LLC |

| SURETY(IES) (Name(s) and business address(es)) | STATE OF INCORPORATION<br>AL |
|---|---|

| | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| Aegis Security Insurance Company<br>P. O. Box 3153<br>Harrisburg, PA  17105 | MILLION(S)<br>3 | THOUSAND(S)<br>389 | HUNDRED(S)<br>551 | CENTS<br>00 |
| | CONTRACT DATE<br>9/16/2016 | CONTRACT NUMBER<br>VA246-16-C-0065<br>Purchase Order No. 659-C60338 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum.  For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally.  However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us.  For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety.  If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made.  Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| BES Design/Build, LLC | PRINCIPAL | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *[signature]* (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

| | CORPORATE SURETY(IES) | | |
|---|---|---|---|
| **SURETY A** | NAME & ADDRESS | Aegis Security Insurance Company<br>P. O. Box 3153 , Harrisburg, PA  17105 | STATE OF INCORPORATION<br>PA | LIABILITY LIMIT<br>$ 5,644,000.00 |
| | SIGNATURE(S) | 1. *[signature]* | 2. *[signature]* | |
| | NAME(S) & TITLE(S) (Typed) | 1. Scott Mahorsky       , Attorney-in-Fact | 2. Kimberly G. Rively  Witness | |

AUTHORIZED FOR LOCAL REPRODUCTION
*Previous edition is NOT usable*

STANDARD FORM 25A (REV. 8/2016)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

## CORPORATE SURETY(IES) *(Continued)*

| SURETY B | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY C | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY D | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY E | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY F | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY G | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

(b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

(c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# EXHIBIT "B"

Bond No.  B10 028 900

| PERFORMANCE BOND<br>(See instructions on reverse) | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br><br>September 20, 2016 | OMB Control Number:  9000-0045<br>Expiration Date:  7/31/2019 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995.  You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number.  The OMB control number for this collection is 9000-0045.  We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions.  Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to:  General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)*<br><br>BES Design/Build, LLC<br>766 Middle Street<br>Fairhope,  AL  36532 | TYPE OF ORGANIZATION *("X" one)*<br>☐ INDIVIDUAL    ☐ PARTNERSHIP    ☐ JOINT VENTURE<br>☐ CORPORATION   ☒ OTHER *(Specify)* LLC<br><br>STATE OF INCORPORATION<br>AL |
|---|---|

| SURETY(IES) *(Name(s) and business address(es))*<br><br>Aegis Security Insurance Company<br>P. O. Box 3153<br>Harrisburg, PA  17105 | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S)<br>3 | THOUSAND(S)<br>389 | HUNDRED(S)<br>551 | CENTS<br>00 |
| | CONTRACT DATE<br>9/16/2016 | CONTRACT NUMBER<br>VA246-16-C-0065<br>Purchase Order No. 659-C60338 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum.  For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally.  However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us.  For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety.  If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal-

(a)(1)  Performs and fulfills all the understanding, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice of the Surety(ies) and during the life of any guaranty required under the contract, and

(2)  Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made.  Notice of those modifications to the Surety(ies) are waived.

(b)  Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to 41 USC Chapter 31, Subchapter III, Bonds, which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

| BES Design/Build, LLC | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *M. Nalley Doll* (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. | (Seal) |
| NAME(S)<br>*(Typed)* | 1. | 2. | |

| | | CORPORATE SURETY(IES) | | |
|---|---|---|---|---|
| SURETY A | NAME &<br>ADDRESS | Aegis Security Insurance Company<br>P. O. Box 3153 , Harrisburg, PA  17105 | STATE OF INCORPORATION<br>PA | LIABILITY LIMIT ($)<br>$5,644,000.00 |
| | SIGNATURE(S) | 1. | | |
| | NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. Scott Mahorsky          , Attorney-in-Fact | Kimberly G. Rively, Witness | |

AUTHORIZED FOR LOCAL REPRODUCTION<br>*Previous edition is NOT usable*

STANDARD FORM 25 (REV. 8/2016)<br>Prescribed by GSA-FAR (48 CFR) 53.228(b)

**CORPORATE SURETY(IES)** *(Continued)*

| SURETY B | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| BOND PREMIUM ➤ | RATE PER THOUSAND ($) $15.00 | TOTAL ($) $50,843.00 |
|---|---|---|

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of bonds, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25** (REV. 8/2016) **BACK**

# EXHIBIT "C"

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**DESIGN/BUILD**

BES Design Build, LLC
766 Middle St.
Fairhope, Alabama 36532
Phone: (251) 990-5778
Fax: (251) 990-3716

# Contract
## SC-16528-004

Project: 16528 - FL - Ft Myers - New U.S. Marshals Service Holding Cells
Project Ft. Myers Federal Building and Courthouse - GS-P-04-16-EX-7500
2110 1st St
Ft. Myers, Florida 33901

## Elevator

| DATE CREATED: | 03/14/2017 | | |
|---|---|---|---|
| CONTRACT COMPANY: | ThyssenKrupp Elevator Americas (Marietta, GA) 3005 Chastain Meadows Parkway, Suite 100 Marietta, Georgia 30066 Phone: (678) 589-1134 Fax: (866) 768-8655 | CREATED BY: | Brian Wittendorfer (BES Design/Build, LLC) 766 Middle St Fairhope, Alabama 36532 |
| CONTRACT STATUS: | Draft | EXECUTED: | No |
| START DATE: | | ESTIMATED COMPLETION DATE: | |
| SIGNED CONTRACT RECEIVED DATE: | | ACTUAL COMPLETION DATE: | |
| DEFAULT RETAINAGE: | 0.0% | | |

DESCRIPTION:
Furnish and install complete the Geared Traction Passenger Elevator per plans, specs, and amendments.

INCLUSIONS:
Certified Payroll must be turned in via email every Tuesday, following the prior week of work to (certifiedpayroll@besdesignbuild.com) and checked against the Superintendent's published Daily Report before submitting. This form is found on https://app.procore.com/106600/project/daily_log/list.

Send to BES Design/Build, LLC, PO BOX 2263 Fairhope, AL 36533 or accountspayable@besdesignbuild.com. Invoices are due the 20th of each month and must include lien waiver's
Provide all labor (Davis Bacon as/if required).
Scheduling of all work to be coordinated with BES Design/Build's on-site Project Superintendent.
OSHA 10 Hr for all employees working onsite.
P&P Bond
Security Clearances for workers
Provide submittals as required for review and acceptance by A/E and owner as required by contract documents. All submittals must be approved before any on-site work is performed.
All material must meet the Buy American Act and any deviations must be approved by the Contracting Officer.
All subcontractors are responsible for cleanup of work areas.
Provide personnel with all proper PPE as required.
Provide adequate personnel for the project as determined by the Project Superintendent.

EXCLUSIONS:

ATTACHMENTS:

| # | COST CODE | DESCRIPTION | TYPE | AMOUNT |
|---|---|---|---|---|
| 1 | 14-00 00 - Conveying Equipment | Elevator - Sub Material | Sub Material | $ 110,580.60 |
| 2 | 14-00 00 - Conveying Equipment | Elevator - Sub Labor | Sub Labor | $ 73,720.40 |
| | | | Grand Total: | $ 184,301.00 |

Printed On: 03/21/2017  05:04 PM

DocuSign Envelope ID: D5S24746-35DB-458D-B516-03B24F58AF05



Contract
SC-16528-004

# BES Design/Build, LLC Subcontract Articles

## ARTICLE 1

### INTENTIONALLY LEFT BLANK

## ARTICLE 2

### SCOPE OF WORK

2.1 **SUBCONTRACTOR'S WORK.** The Contractor contracts with the Subcontractor as an independent contractor, to perform the work described in Article 16. The Subcontractor shall perform such work (hereinafter called the "Subcontractor's Work") under the general direction of the Contractor and in accordance with this Agreement and the Contract Documents.

2.2 **CONTRACT DOCUMENTS.** The Contract Documents which are binding on the Subcontractor are as set forth in Paragraph 16.5. Upon the Subcontractor's request the Contractor shall furnish a copy of any part of these documents. Nothing in the Contract Documents shall be construed to create a contractual relationship between persons or entities other than the Contractor and Subcontractor.

2.3 **"FLOW-DOWN PROVISIONS"** are those terms and conditions of the Prime Contract and/or Delivery Order/ Task Order that also apply to the Subcontractor. A copy of the *Contractor's* agreement with the Owner, known as the Prime Agreement (from which compensation amounts may be deleted), is made a part of this Agreement and is available upon request. By signing this document, the Consultant acknowledges that the Prime Agreement with the Owner flows down to the Consultant's firm, which is a stipulation in the Prime Agreement.

2.5 **CONFLICTS.** In the event of a conflict between this Agreement and the Contract Documents, this Agreement shall govern.

## ARTICLE 3

### SCHEDULE OF WORK

3.1 **TIME IS OF ESSENCE.** Time is of the essence for both parties, and they mutually agree to see to the performance of their respective work and the work of their subcontractors so that the entire Project may be completed in accordance with the Contract Documents and the Schedule of Work. The Contractor shall prepare the Schedule of Work and revise such schedule as the Work progresses.

3.2 **DUTY TO BE BOUND.** Both the Contractor and the Subcontractor shall be bound by the Schedule of Work. The Subcontractor shall provide the Contractor with any requested scheduling information for the Subcontractor's Work. The Schedule of Work and all subsequent changes thereto shall be submitted to the Subcontractor in advance of the required performance.

3.3 **SCHEDULE CHANGES.** The Subcontractor recognizes that changes will be made in the Schedule of Work and agrees to comply with such changes.

3.4 **PRIORITY OF WORK.** The Contractor shall have the right to decide the time, order and priority in which the various portions of the Work shall be performed and all other matters relative to the timely and orderly conduct of the Subcontractor's Work. The Subcontractor shall commence its work within two days of notice to proceed or the agreed upon time from the Contractor and if such work is interrupted for any reason the Subcontractor shall resume such work within two working days from the Contractor's notice to do so.

## ARTICLE 4

### CONTRACT PRICE

The Contractor agrees to pay to the Subcontractor for the satisfactory performance of the Subcontractor's Work the amount stated in Article 1 subject to additions or deductions per Article 6.

Printed On: 03/21/2017  05:04 PM

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05


**DESIGN/BUILD**

**Contract
SC-16528-004**

## Wage Determination

### DAVIS – BACON ACT

Be advised that as this is a federal project, therefore, the Davis-Bacon Act applies and must be strictly enforced. The Department of Labor requires minimum pre-established prevailing wages and fringe rates be paid to workers on this site as provided in the Wage Determination information attached to this Subcontract Agreement. Effective with the date of subcontract execution, though to final work on site, weekly Certified Payroll Reports (CPRs) are required to be submitted to BESDB each week to certifiedpayroll@besdesignbuild.com using federal form WH-347 or similar which are in detail all craft labor and mechanics employed by Subcontractor and any lower-tier Subcontractors working on the site of the work. If no work has been performed by the subcontractor or their lower tier subcontractors during a work week, a "No Work" CPR must be submitted. Payments to the subcontractor will be held until all compliant CPRs for the subcontractor and their lower tier subcontractors have been received and validated covering the period of the subcontractor's pay application. The final CPR submitted by the subcontractor and their lower tier subcontractors must state "Final" in order for final payment to be released to the subcontractor. The certification of the CPRs must be provided by the applicable legal employer representative of the craft labor and/or mechanics listed, and must be notarized. The originals of all CPRs are also to be mailed to BESDB corporate offices located at: 766 Middle Street, Fairhope, AL 36532.

### THE SERVICE CONTRACT ACT OF 1965

The provisions of The Service Contract Act of 1965 are not applicable to this project, and as such, reporting for the provisions of The Service Contract Act of 1965 are not required.

### STATEMENT AND ACKNOWLEDGEMENT FORM (SF-1413)

Within 7 days after award of the contract, the subcontractor shall deliver to the Contractor a completed Statement of Acknowledgment Form (SF-1413) for each subcontract, including the subcontractor's signed and dated acknowledgment that the following clauses: Davis-Bacon Act, Contract Work Hours and Safety Standards Act – Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination – Debarment, Disputes Concerning Labor Standards, Compliance with Davis-Bacon and Related Act Regulations, and Certification of Eligibility, and such other clauses as the Owner Contracting Officer may, by appropriate instructions, require, and also a clause requiring subcontractors to include these clauses in any lower tier subcontracts.

The Subcontractor shall also have all lower-tier subcontractors performing any construction type work under this subcontract sign and return a completed Statement of Acknowledgment Form (SF-1413) acknowledging the aforementioned clauses.

### ARTICLE 5

### PAYMENT

5.1     GENERAL PROVISIONS
5.1.1     SCHEDULE OF VALUES. The Subcontractor shall provide a schedule of values satisfactory to the Contractor and the Owner no more than fifteen (15) days from the date of execution of this Agreement.

5.1.2     ARCHITECT VERIFICATION. Upon request the Contractor shall give the Subcontractor written authorization to obtain directly from the Architect the percentage of completion certified for the Subcontractor's Work.

5.1.3     PAYMENT USE RESTRICTION. Payment received by the Subcontractor shall be used to satisfy the indebtedness owed by the Subcontractor to any person furnishing labor or materials for use in performing the Subcontractor's work on this project before it is used in any other manner.

5.1.4     PAYMENT USE VERIFICATION. The Contractor shall have the right at all times to contact the Subcontractor's subcontractors and suppliers to ensure that the same are being paid promptly by the Subcontractor for labor or materials furnished for use in performing the Subcontractor's Work.

5.1.5     PARTIAL LEIN WAIVERS AND AFFIDAVITS. As a prerequisite for payment, the Subcontractor shall provide in a form satisfactory to the Owner or the Contractor, partial lien or claim waivers and affidavits from the subcontractor, and its subcontractors and suppliers for the completed Subcontractor's Work. Such waivers may be made conditional upon payment.

5.1.6     SUBCONTRACTOR PAYMENT FAILURE. Upon payment by the Contractor, Subcontractor shall promptly pay its lower-tier subcontractors and material suppliers the amounts to which they are entitled. In the event the Contractor has reason to believe that labor, material or other obligations incurred in the performance of the Subcontractor's Work are not being paid, the Contractor may give written notice of such claim or lien to the Subcontractor and may take any steps deemed necessary to assure that progress payments are utilized to pay such obligations including but not limited to the issuance of joint checks. If upon receipt of said notice, the Subcontractor does not (a) supply evidence to the satisfaction of the Contractor that the moneys owing to the claimant(s) have been paid; or (b) post a bond

Printed On: 03/21/2017  05:04 PM

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**DESIGN/BUILD**

Contract
SC-16528-004

indemnifying the Owner, the Contractor, and the Contractor's surety, if any, and the promises from such claim or lien, then the Contractor shall have the right to withhold from any payments due or to become due to the Subcontractor a reasonable amount to protect the Contractor from any and all loss, damage or expense including attorney's fees arising out of or relating to any such claim or lien until the claim or lien has been satisfied by the Subcontractor.

5.1.7   SUBCONTRACTOR ASSIGNMENT OF PAYMENTS. The Subcontractor shall not assign any moneys due or to become due under this Contract, or under any Change Order thereto, without the written consent of Contractor, unless such assignment is intended to create a new security interest within the scope of Article 9 of the Uniform Commercial Code. Should Subcontractor assign all or any part of any moneys due or to become due under this Contract, to create a new security interest or for any other purpose, the instrument of assignment shall contain a clause to the effect that the assignee's right in and to any money due or to become due to the Subcontractor shall be subject to the claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Work under this Subcontract and any Change Orders.

5.1.8   PAYMENT NOT ACCEPTANCE. Payment to the Subcontractor does not constitute or imply acceptance of any portion of the Subcontractor's Work.

5.2      PROGRESS PAYMENTS
5.2.1    APPLICATION. Subcontractor's application for payment shall be itemized and supported by substantiating data as required in the contract Documents for the Contractor's payment application. Subcontractor's application shall be notarized if required. Subcontract payment applications may include payment requests on account of properly authorized Construction Change Directives. Subcontract payment payment application for work performed in the preceding payment period shall be submitted to the Contractor per the terms of this Agreement and specifically Subparagraphs 5.1.1, 5.2.2, 5.2.3, and 5.2.4 for approval of the Contractor. The Contractor shall forward, without delay, the approved value to the Owner for payment.

5.2.2   RETAINAGE/SECURITY. The rate of retainage shall be equal to the percentage retained from the Contractor's payment by the Owner for the Subcontractor's Work, provided the Subcontractor furnishes a bond or other security to the satisfaction of the Contractor. If the Subcontractor has furnished such bond or security, its work is satisfactory and the Contract Documents provide for reduction of retainage at a specified percentage of completion, the Subcontractor's retainage shall also be reduced when the Subcontractor's Work has attained the same percentage of completion, and the Contractor's retainage for the Subcontractor's Work has been so reduced by the Owner. However if the Subcontractor does not provide such bond or security, the rate of retainage shall be the greater of the two, either 5% or equal to the percentage retained from the Contractors payment.
All invoice requests require the following in order to be processed or they will be rejected:
   1.      Certified Payrolls as applicable
   2.      Lien Waivers (internal and final)
   3.      Invoice
Additionally, all contracts $50,000 and above require a Schedule of Values from which the subcontractor will invoice and they will be required to list on the SOV:
   Close-out documents at 5%
   Final testing, inspection and acceptance at 5%

5.2.3   TIME OF APPLICATION. The Subcontractor shall submit progress payment applications to the Contractor no later than the 20th day of each payment period for work performed up to and including the 20th day of the payment period indicating work completed and, to the extent allowed under Subparagraph 5.2.4, materials suitably stored during the preceding payment period.

5.2.4   STORED MATERIALS. Unless otherwise provided in the Contract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Subcontractor's Work but delivered to and suitably stored at the site or at some other location agreed upon in writing. Approval of payment applications for such stored items on or off the site shall be conditioned upon submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Contractor to establish the Owner's title to such materials and equipment or otherwise protect the Owner's and Contractor's interest therein, including transportation to the site.

5.2.5   TIME OF PAYMENT. Progress payments to the Subcontractor for satisfactory performance of the Subcontractor's Work shall be made no later than fourteen (14) days after the Contractor receives payment from the Owner for the Work performed for the invoicing period.

5.2.6   PAYMENT DELAY. If for any reason not the fault of the Subcontractor, the Subcontractor does not receive a progress payment from the Contractor within seven (7) days after such payment is due, as defined in Sub-paragraph 5.2.5, then the Subcontractor, upon giving an additional seven (7) days written notice to the Contractor, and without prejudice to and in addition to any other legal remedies, may stop work until payment of the full amount owing to the Subcontractor has been received. To the extent obtained by the Contractor under the Contract Documents, the contract price shall be increased by the amount of the Subcontractor's reasonable cost of shutdown, delay, and start-up, which shall be effected by appropriate Change Order.
   If the Subcontractor's Work has been stopped for thirty (30) days because the Subcontractor has not received progress payments as required hereunder, the Subcontractor may terminate this Agreement upon giving the Contractor an additional seven (7) days written notice

5.3      FINAL PAYMENT

Printed On: 03/21/2017  05:04 PM

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF06


DESIGN/BUILD

Contract
SC-16528-004

5.3.1    APPLICATION. Upon acceptance of the Subcontractor's Work by the Owner the Contractor, and if necessary, the Architect, and upon the Subcontractor furnishing evidence of fulfillment of the Subcontractor's obligations in accordance with the Contract Documents and Subparagraph 5.3.2, the Contractor shall forward the Subcontractor's application for final payment without delay.

5.3.2    REQUIREMENTS. Before the Contractor shall be required to forward the Subcontractor's application for final payment to the Owner, the Subcontractor shall submit to the Contractor:
  (a)   an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Subcontractor's Work for which the Owner or its property or the Contractor or the Contractor's surety might in any way be liable, have been paid or otherwise satisfied;
  (b)   consent of surety to final payment, if required;
  (c)   satisfaction of required closeout procedures;
  (d)   certification that insurance required by the Contract Documents to remain in effect beyond final payment pursuant to Paragraph 13.4 is in effect and will not be cancelled or allowed to expire without at least thirty (30) days' written notice to the Contractor unless a longer period is stipulated in the Contract; and
  (e)   other data if required by the Contractor or Owner, such as receipts, releases, and waivers of liens to the extent and in such form as may be designated by the Contractor or Owner. Final payment shall constitute a waiver of all claims by the Subcontractor relating to the Subcontractor's Work, but shall in no way relieve the Subcontractor of liability for the obligations assumed under Paragraph 9.10, or for faulty or defective work appearing after final payment.

5.3.3    TIME OF PAYMENT. Final payment of the balance due of the Contract Price shall be made to the Subcontractor:
  (a)   upon receipt of the Owner's waiver of all claims related to the Subcontractor's Work except for unsettled liens, unknown defective work, and noncompliance with the Contract Documents or warranties; and
  (b)   within seven (7) days after receipt by the Contractor of final payment form the Owner for such Subcontractor's Work.

5.3.4    FINAL PAYMENT DELAY. If the Owner or its designated agent does not issue a certificate for Final Payment or the Contractor does not receive such payment for any cause which is not the fault of the Subcontractor, the Contractor shall promptly inform the Subcontractor in writing. The Contractor shall also diligently pursue, with the assistance of the Subcontractor, the prompt release by the Owner of the final payment due for the Subcontractor's Work. At the Subcontractor's request and expense, to the extent agreed upon in writing, the Contractor shall institute reasonable legal remedies to mitigate the damages and pursue payment of the Subcontractor's final payment including interest thereon.

5.4    LATE PAYMENT INTEREST. To the extent obtained by the Contractor, under the Contract Documents, progress payments or final payment due and unpaid under this Agreement shall bear interest from the date payment is due at the rate provided in the Contract Documents, or, in the absence thereof, at the legal rate prevailing at the place of the Project.

ARTICLE 6

CHANGES, CLAIMS AND DELAYS

6.1    CHANGES. When the Contractor orders in writing, the Subcontractor, without nullifying this Agreement, shall make any and all changes in the Work which are within the general scope of this Agreement. Adjustments in the Contract Price or Contract time, if any, resulting from such changes shall be set forth in a Subcontract Change Order or a Subcontract Construction Change Directive pursuant to the Contract Documents. No such adjustments shall be made for any changes performed by the Subcontractor that have not been ordered by the Contractor. A Subcontract Change Order is a written instrument prepared by the Contractor and signed by the Subcontractor stating their agreement upon the change in the scope of the Work, adjustment in the contract Price or Schedule of Work. A Subcontract Construction Change Directive is a written instrument prepared by the Contractor directing a change in the Work and stating a proposed adjustment, if any, in the Contract Price or Schedule of Work or both. A Subcontract Construction Change Directive shall be used in the absence of agreement on the terms of a Subcontract Change Order.

6.2    CLAIMS RELATING TO OWNER. The Subcontractor agrees to make all claims for which the Owner is or may be liable in the manner and within the time limits provided in the Contract Documents for like claims by the Contractor upon the Owner and in sufficient time for the Contractor to make such claims against the Owner in accordance with the Contract Documents. The Contractor agrees to permit the Subcontractor to prosecute a claim in the name of the Contractor for the use and benefit of the Subcontractor in the manner provided in the Contract Documents for like claims by the Contractor upon the Owner.

6.3    CLAIMS RELATING TO CONTRACTOR.
The Subcontractor shall give the Contractor written notice of all claims not included in Paragraph 6.2 within thirty (30) days of the occurrence of the event for which claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between the Contractor and the Subcontractor not relating to claims included in Paragraph 6.2 shall be resolved in the manner provided in Article 14.

6.4    ADJUSTMENT IN CONTRACT PRICE. If a Subcontract Change Order or Construction Change Directive requires an adjustment in the Contract Price, the adjustment shall be established by one of the following methods:
  1.   mutual agreement on a lump sum with sufficient information to substantiate the amount;

Page 5 of 16                                    Printed On: 03/21/2017  05:04 PM

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**Contract**
**SC-16528-004**

2. unit prices already established in the Contract Documents or if not established by the Contract Documents then established by mutual agreement for this adjustment; or
3. a mutually determined cost plus a jointly acceptable allowance for overhead and profit.

6.5  **SUBSTANTIATION OF ADJUSTMENT.** If the Subcontractor does not respond promptly or disputes the method of adjustment, the method and the adjustment shall be determined by the Contractor on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Contract Price, an allowance for overhead and profit of 15%.
The Subcontractor shall maintain for the Contractor's review and approval an appropriately itemized and substantiated accounting of the following items attributable to the Subcontract Change Order or Subcontract Construction Change Directive:
1. labor costs, including Social Security, health, welfare, retirement and other fringe benefits as normally required, and state worker's compensation insurance;
2. costs of materials, supplies and equipment, whether incorporated in the Work or consumed, including transportation costs;
3. costs of renting, either from the Contractor or from others, of machinery and equipment and other hand tools;
4. costs of bond and insurance premiums, permit fees and taxes attributable to the change; and
5. costs of additional supervision and field office personnel services necessitated by the change

6.6  **DELAY.** If the progress of the Subcontractor's Work is substantially delayed without the fault or responsibility of the Subcontractor, then the time for the Subcontractor's Work shall be extended by Subcontract Change Order or Subcontract Construction Change Directive to the extent obtained by the Contractor under the contract Documents and the Schedule of Work shall be revised accordingly.
The Contractor shall not be liable to the Subcontractor for any damages or additional compensation as a consequence of delays caused by any person not a party to this Agreement unless the Contractor has first recovered the same on behalf of the Subcontractor from said person, it being understood and agreed by the Subcontractor that, apart from recovery from said person, the Subcontractor's sole and exclusive remedy for delay shall be an extension in the time for performance of the Subcontractor's Work.

6.7  **LIQUIDATED DAMAGES.** If the Contract Documents provide for liquidated or other damages for delay beyond the completion date set forth in the Contract Documents, and such damages are assessed, then the Contractor may assess same against the Subcontractor in proportion to the Subcontractor's share of the responsibility for such delay. However the amount of such assessment shall not exceed the amount assessed against the Contractor.
Nothing set forth herein shall limit the Subcontractor's liability to the Contractor for the Contractor's actual delay damages caused by the Subcontractor's delay. The Subcontractor shall be liable to the Contractor for the Contractor's actual damages caused by the Subcontractor's delay.

## ARTICLE 7

### CONTRACTOR'S OBLIGATIONS

7.1  **CONTRACT DOCUMENTS.** Prior to executing this Subcontract, the Contractor shall make available to the Subcontractor the Contract Documents which are binding on the Subcontractor and set forth in Paragraph 16.5.

7.2  **AUTHORIZED REPRESENTATIVE.** The Contractor shall designate one or more persons who shall be the Contractors authorized representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) the subcontractor shall look to for instructions, orders and/or directions, except in an emergency.

7.3  **STORAGE APPLICATIONS.** The Contractor shall allocate adequate storage areas, if available, for the Subcontractor's materials and equipment during the course of the Subcontractor's Work.

7.4  **TIMELY COMMUNICATIONS.** The Contractor shall transmit, with reasonable promptness, all submittals, transmittals, and written approvals relating to the Subcontractor's Work.

7.5  **NON-CONTRACTED SERVICES.** The Contractor agrees, except as otherwise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Contractor provides the Subcontractor notice:
(a) prior to furnishing of the services and materials, except in an emergency affecting the safety of persons or property;
(b) in writing of such claim within three days of first furnishing such services or materials; and
(c) the written charges for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

## ARTICLE 8

### SUBCONTRACTOR'S OBLIGATIONS

8.1  **OBLIGATIONS DERIVATIVE.** The Subcontractor binds itself to the Contractor under this Agreement in the same manner as the Contractor is bound to the Owner under the Contract Documents, applicable Federal Acquisition Regulations and supplemental agency regulations and will so bind its lower-tier subcontractors. The Subcontractor shall make available to its lower-tier subcontractors the Contract Documents which are binding on the lower-tier subcontractors.

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**Contract**
**SC-16528-004**

**8.2     RESPONSIBILITIES.** The Subcontractor shall furnish all of the labor, materials, equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools as are necessary for the proper performance of the Subcontractor's Work in strict accordance with and reasonably inferable from the Contract Documents. The Subcontractor shall provide a list of proposed subcontractors and suppliers, be responsible for taking field dimensions, providing tests, ordering of materials and all other actions as required to meet the Schedule of Work. In accordance with FAR 25.1, the Buy American Statute restricts the purchase of supplies that are not domestic end products.

**8.3     SHOP DRAWINGS.** The Subcontractor shall be responsible to the Contractor for the accuracy and conformity with the Contract Documents and other submittals that pertain to its work in the same manner as the Contractor is responsible therefore to the Owner. Shop drawings, or their approval by the Contractor, shall not be deemed to authorize deviations or substitutions from the requirements of the Contract Documents.

**8.4     TEMPORARY SERVICES.** The Subcontractor shall furnish all temporary services and/or facilities necessary to perform its work, except as provided in Article 16. Said article also identifies those common temporary services, if any, which are to be furnished by the Subcontractor.

**8.5     COORDINATION.** The Subcontractor shall:
  (a)  cooperate with the Contractor and all others whose work may interfere with the Subcontractor's Work;
  (b)  specifically note and immediately advise the Contractor of any such interference with the Subcontractor's Work; and
  (c)  participate in the preparation of coordination drawings and work schedules in areas of congestion.

**8.6     AUTHORIZED REPRESENTATIVE.** The Subcontractor shall designate one or more persons who shall be the authorized Subcontractor's representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) to whom the Contractor shall issue instructions, orders or directions, except in an emergency.

**8.7     PROVISION FOR INSPECTION.** The Subcontractor shall notify the Contractor when portions of the Subcontractor's Work are ready for inspection. The Subcontractor shall at all times furnish the Contractor and its representatives adequate facilities for inspecting materials at the site or any place where materials under this Agreement may be in the course of preparation, process, manufacture or treatment.
    The Subcontractor shall furnish to the Contractor, in such detail and as often as required, full reports of the progress of the Subcontractor's Work irrespective of the location of such work. Additionally, Subcontractor shall pay Contractor the cost of any re-inspections due to failure of an inspection on work performed by the Subcontractor.

**8.8     CLEANUP.** The Subcontractor shall follow the Contractor's cleanup and safety directions, and
  (a)  at all times keep the building and premises free from debris and unsafe conditions resulting from the Subcontractor's Work; and
  (b)  broom clean each work area prior to discontinuing work in the same.

If the Subcontractor fails to immediately commence compliance with cleanup duties within twenty-four (24) hours after written notification from the Contractor of non-compliance, the Contractor may implement such cleanup measures without further notice and deduct the cost thereof from any amounts due or to become due the Subcontractor.

**SAFETY.** The prevention of accidents on or in the vicinity of its Work is the Subcontractor's responsibility, even if Contractor establishes a safety program for the entire Project. Subcontractor shall establish a safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by the Contractor and Owner, including, but not limited to, requirements imposed by the Contract Documents. Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Work which Contractor deems unsafe until corrective measures satisfactory to Contractor shall have been taken. Contractor's failure to stop Subcontractor's unsafe practices shall not relieve Subcontractor of the responsibility therefore. Subcontractor shall notify Contractor immediately following any accident and promptly confirm the notice in writing. A detailed written report shall be furnished to the Contractor. Subcontractor shall indemnify Contractor for fines, damages or expenses incurred by the Contractor because of the Subcontractor's failure to comply with safety requirements. Subcontractor shall be solely responsible for protection of their persons and property on and about the site of its work, and Subcontractor warrants that it will take the precautions necessary to ensure a safe working environment for the safety of all persons and property on the site that may be affected by their work. Subcontractor understands and acknowledges the potential for contact with hazardous waste or materials in the conduct of the work and certifies that its employees engaged in the work have completed health and safety training courses as specified by the Occupational Safety and Health Administration (OSHA), Environmental Protection Agency (EPA) and respective chapters 29 and 40 of the Code of Federal Regulations (CFR). Subcontractor shall additionally assure its compliance with CONTRACTOR's health and safety policies and procedures, site safety plans or other health and safety rules specified for the work. Subcontractor shall flow down this requirement to any and all lower-tiered subcontractors.

Subcontractor shall provide and maintain work environments and procedures which will: (1) Safeguard the public and CONTRACTOR and Government personnel, property, materials, supplies, and equipment exposed to Subcontractor operations and activities; (2) Avoid interruptions of CONTRACTOR and Government operations and delays in project completion dates; and (3) Control costs in the performance of this subcontract. For these purposes on subcontracts for construction or dismantling, demolition, or removal of improvements, the Subcontractor shall: (1) Provide appropriate safety barricades, signs, and signal lights, (2) Comply with the regulations

Page 7 of 16                                                                 Printed On: 03/21/2017  05 :04 PM

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F55AF05


**DESIGN/BUILD**

Contract
SC-16528-004

issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910, Federal Acquisition Regulation (FAR), and Veterans Affairs Acquisition Regulation (VAAR); and (3) Ensure that any additional measures CONTRACTOR determines to be reasonably necessary are taken.

If this Subcontract is for construction or dismantling, demolition or removal of improvements with any Department of Veteran Affairs agency or component, the Subcontractor shall comply with all pertinent provisions of the latest version of OSHA, in effect on the date of the solicitation.

Whenever CONTRACTOR becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, CONTRACTOR shall notify the Subcontractor orally, with written confirmation, and request immediate initiation of corrective action. This notice, when delivered to the Subcontractor or the Subcontractor's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required. After receiving the notice, the Subcontractor shall immediately take corrective action. If the Subcontractor fails or refuses to promptly take corrective action, CONTRACTOR may issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Subcontractor shall not be entitled to any equitable adjustment of the Subcontract price or extension of the performance schedule on any stop work order issued under this clause.

Before commencing the work, the Subcontractor shall: (1) submit a written proposed plan for ensuring site safety and accident prevention. The plan shall include an analysis of the significant hazards to life, limb, and property inherent in Subcontract work performance and a plan for controlling these hazards; and (2) meet with representatives of CONTRACTOR to discuss and develop a mutual understanding relative to administration of the overall safety program. The Subcontractor shall reference the safety addendums included; (1) BESDB Safety Manual, (2) Subcontractor Safety Requirements.

Subcontractor shall insert the full text of this article, with appropriate changes in the designation of the parties, in all lower-tier subcontracts.

8.9      PROTECTION OF THE WORK. The Subcontractor shall take necessary precautions to properly protect the Subcontractor's Work and the work of others from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the Work or property of the Owner, the Contractor or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor, or the Contractor may so remedy and deduct the cost thereof from any amounts due or to become due the Subcontractor.

8.10     PERMITS, FEES AND LICENSES. The Subcontractor shall give adequate notices to authorities pertaining to the Subcontractor's Work and secure and pay for all permits, fees, licenses, assessments, inspections and taxes necessary to complete the Subcontractor's Work in accordance with the Contract Documents.
        To the extent obtained by the Contractor under the Contract Documents, the Subcontractor shall be compensated for additional costs resulting from laws, ordinances, rules, regulations and taxes enacted after the date of the Agreement.

8.11     SUBCONTRACTOR ASSIGNMENT OF WORK. The Subcontractor shall not assign the whole nor any part of the Subcontractor's Work without prior written approval of the Contractor. The Contractor's approval shall not be unreasonably withheld. Lower-tier subcontractors and suppliers previously approved by the Contractor may be listed at Paragraph 16.4.

8.12     NON-CONTRACTED SERVICES. The Subcontractor agrees, except as otherwise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Subcontractor provides the contractor notice:
    (a)  prior to furnishing of the services or materials, except in an emergency affecting the safety of persons or property;
    (b)  In writing of such claim within three (3) days of first furnishing such services or materials; and
    (c)  The written charge for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

8.13     MATERIALS SAFETY. To the extent that the Contractor is not obligated by the Contract documents or by law to perform work which involves pollutants, hazardous or toxic substances, hazardous waste, asbestos or PCB's, the Subcontractor likewise is not obligated. To the extent that the Contractor has obligations under the Contract Documents or by law regarding such materials within the scope of the Subcontractor's work, the Subcontractor likewise shall have these obligations.

ARTICLE 9

SUBCONTRACT PROVISIONS

9.1      LAYOUT RESPONSIBILITY AND LEVELS. The contractor shall establish principal axis lines of the building and site whereupon the subcontractor shall lay out and be strictly responsible for the accuracy of the Subcontractor's Work and for any loss or damage to the Contractor or others by reason of the Subcontractor's failure to set out or perform its work correctly. The Subcontractor shall exercise prudence so that the actual final conditions and details shall result in the alignment of finish surfaces.

9.2      WORKMANSHIP. Every part of the Subcontractor's Work shall be executed in strict accordance with the Contract Documents in the most sound, workmanlike, and substantial manner. All workmanship shall be of the best of its several kinds, and all materials used in the Subcontractor's Work shall be furnished in ample quantities to facilitate the proper and expeditious execution of the work, and shall be new except such materials as may be expressly provided in the Contract Documents to be otherwise.

Printed On: 03/23/2017 05:04 PM

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**Contract**
**SC-16528-004**

9.3    MATERIALS FURNISHED BY OTHERS. In the event the scope of the Subcontractor's Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Subcontractor to examine the items as provided and thereupon handle, store and install the items with such skill and care as to ensure a satisfactory and proper installation. Loss or damage due to acts of the Subcontractor shall be deducted from any amounts due or to become due the Subcontractor. In accordance with FAR 25.1, the Buy American Statute restricts the purchase of supplies that are not domestic end products.

9.4    SUBSTITUTIONS. No Substitutions shall be made in the Subcontractor's Work unless permitted in the Contract Documents and only then upon the Subcontractor first receiving all approvals required under the Contract Documents for substitutions. The Subcontractor shall indemnify the Contractor as a result of such substitutions, whether or not the Subcontractor has obtained approval thereof.

9.5    USE OF CONTRACTOR'S EQUIPMENT. The Subcontractor, its agents, employees, subcontractors or suppliers shall not use the Contractor's equipment without the express written permission of the Contractor's designated representative.
        If the Subcontractor or any of its agents, employees, suppliers or lower-tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items owned, leased, or under the control of the Contractor, the Subcontractor shall defend, indemnify and be liable to the Contractor as provided in Article 12 for any loss or damage (including personal injury or death) which may arise from such use except where such loss or damage shall be found to have been due solely to the negligence of the Contractor's employees operating such equipment.

9.6    CONTRACT BOND REVIEW. The Contractor's Payment Bond for the Project, if any, may be reviewed and copied by the Subcontractor. Subcontractor is required to provide a Payment and Performance Bond-Back for the total amount of this contract for all contracts $100,000.00 and above unless otherwise noted in the inclusions or exclusions section.

9.7    OWNER ABILITY TO PAY. The Subcontractor shall have the right to receive from the Contractor such information as the Contractor has obtained relative to the Owner's financial ability to pay for the Work.

9.8    PRIVITY. Until final completion of the Project the Subcontractor agrees not to perform any work directly for the Owner or any tenants thereof, or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by the Contractor. All Work for this Project performed by the Subcontractor shall be processed and handled exclusively by the Contractor.

9.9    SUBCONTRACT BOND. If a Performance and Payment Bond is not required of the subcontractor under Article 16, then within the duration of this Agreement, the Contractor may require such bonds before work is started and the Subcontractor shall provide the same.
        Said bonds shall be in the full amount of this Agreement in a form and by a surety satisfactory to the Contractor.
        The Subcontractor shall be reimbursed without retainage for cost of same simultaneously with the first progress payment hereunder.
        The reimbursement amount for the bonds shall not exceed the manual rate for such subcontractor work.
        In the event the Subcontractor shall fail to promptly provide such requested bonds, the Contractor may terminate this Agreement and re-let the work to another subcontractor and all Contractor costs and expenses incurred thereby shall be paid by the Subcontractor.

9.10   WARRANTY. The Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and as called for in the Contract Documents.
        The Subcontractor agrees to satisfy such warranty obligations which appear within the warranty period established in the Contract Documents without cost to the Owner or the Contractor.
        If no warranty is required of the Contractor in the Contract Documents, then the Subcontractor shall warrant its work as described above for the period of one year from the date(s) of substantial completion of all or a designated portion of the Subcontractor's Work or acceptance or use by the Contractor or Owner of designated equipment, whichever is sooner.
        The Subcontractor further agrees to execute any special warranties that shall be required for the Subcontractor's Work prior to final payment.

ARTICLE 10

RECOURSE BY CONTRACTOR

10.1    FAILURE OF PERFORMANCE

10.1.1    NOTICE TO CURE. If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work, or it fails to make prompt payment for its workers, lower-tier subcontractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach of a provision of this Agreement, the Subcontractor shall be deemed in default of this Agreement. If the Subcontractor fails within three (3) working days after written notification to commence and continue satisfactory correction of such default with diligence and promptness, then the Contractor without prejudice to any rights or remedies, shall have the right to any or all of the following remedies;
    (a)    supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractor's Work, or any part thereof which the Subcontractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees;

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**Contract
SC-16528-004**

(b) contract with one or more additional contractors, to perform such part of the Subcontractor's Work as the Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Subcontractor;
(c) withhold payment of any moneys due the Subcontractor pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the satisfaction of the Contractor; and
(d) in the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice.

10.1.2   TERMINATION BY CONTRACTOR. If the Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) working days after written notification issued under Subparagraph 10.1.1, then the Contractor may, in lieu of or in addition to Subparagraph 10.1.1, issue a second written notification, to the Subcontractor and its surety, if any. Such notice shall state that if the Subcontractor fails to commence and continue correction of a default within seven (7) working days of the written notification, the Agreement will be deemed terminated and the Contractor may use any materials, implements, appliances or tools furnished by or belonging to the Subcontractor to complete the Subcontractor's Work.
The Contractor also may furnish those materials, equipment and/or employ such workers or subcontractors as the Contractor deems necessary to maintain the orderly progress of the Work.
All costs incurred by the Contractor in performing the Subcontractor's Work, including reasonable overhead, profit and attorney's fees, shall be deducted from any moneys due or to become due the Subcontractor. Additionally, legal action may be taken against Subcontractor for the payment of any amount by which such expenses may exceed the unpaid balance of the Contract Price.

10.1.3   USE OF SUBCONTRACTOR'S EQUIPMENT. If the Contractor performs work under this Article or sublets such work to be so performed, the Contractor and/or the persons to whom work has been sublet shall have the right to take and use any materials, implements, equipment, appliances or tools furnished by, belonging or delivered to the Subcontractor and located at the Project.

10.2   BANKRUPTCY
10.2.1   TERMINATION ABSENT CURE.
If Subcontractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Agreement or, if there has been a default or the Subcontractor is unable to give adequate assurance that the Subcontractor will perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions for the Bankruptcy Code.

10.2.2   INTERIM REMEDIES. If the Subcontractor is not performing in accordance with the Schedule of Work at the time a petition for bankruptcy is filed, or at any subsequent time, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Article as are reasonably necessary to maintain the Schedule of Work.
The Contractor may offset against any sums due or to become due the Subcontractor all costs incurred in pursing any of the remedies provided hereunder, including but not limited to, reasonable overhead, profit and attorney's fees.
The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

10.3   SUSPENSION BY OWNER. Should the Owner suspend its contract with the Contractor or any part which includes the Subcontractor's Work, the contractor shall so notify the Subcontractor in writing and upon written notification the Subcontractor shall immediately suspend the Subcontractor's Work.
In the event of such Owner suspension, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of an Owner suspension and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor.

10.4   TERMINATION BY OWNER. Should the Owner terminate its contract with the Contractor or any part which includes the Subcontractor's Work, the Contractor shall so notify the Subcontractor in writing and upon written notification, this Agreement shall be terminated and the Subcontractor shall immediately stop the Subcontractor's Work, follow all of Contractor's instructions, and mitigate all costs.
In the event of such Owner termination, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents.
The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner termination and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

10.5   CONTINGENT ASSIGNMENT OF SUBCONTRACT
The Contractor's contingent assignment of the Subcontract to the Owner, if provided in the contract Documents, is effective when the Owner (a) has terminated the Contract for cause and (b) has accepted the assignment by notifying the Subcontractor in writing. This contingent assignment is subject to the prior rights of a surety that may be obligated under the Contractor's bond, if any. Subcontractor hereby consents to such assignment and agrees to be bound by the assignee by the terms of this Subcontract.

10.6   SUSPENSION BY CONTRACTOR. The Contractor may order the Subcontractor in writing to suspend, delay, or interrupt all or any part of the Subcontractor's Work for such period of time as may be determined to be appropriate for the convenience of the Contractor. Phased or interrupted Work when required shall not be deemed a suspension of Work.

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**DESIGN/BUILD**

**Contract**
**SC-16528-004**

The Subcontractor shall notify the Contractor in writing within ten (10) working days after receipt of the Contractor's order of the effect of such order upon the Subcontractor's Work. To the extent allowed the Contractor under the Contract Documents, the Contract Price or contract time shall be adjusted by Subcontract Change Order for any increase in the time or cost of performance of this Agreement caused by such suspension, delay or interruption.

No claim under this Article shall be allowed for any costs incurred more than ten (10) working days prior to the Subcontractor's notice to the Contractor.

Neither the Contract Price nor the contract time shall be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been suspended, delayed, or interrupted by the fault or negligence of the Subcontractor or by a cause for which Subcontractor would have been responsible.

The Contract Price shall not be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been suspended, delayed or interrupted by a cause for which the Subcontractor would have been entitled only to a time extension under this Agreement.

10.7     WRONGFUL EXERCISE. If the Contractor wrongfully exercises any option under this Article, the Contractor shall be liable to the Subcontractor solely for the reasonable value of work performed by the Subcontractor prior to the Contractor's wrongful action, including reasonable overhead and profit on the Work performed, less prior payments made, and attorney's fees.

## ARTICLE 11

### LABOR RELATIONS

All headings herein are for convenience only and are not to be construed as limitations upon the scope of the paragraphs to which they refer. This Agreement is intended by the parties as the final, complete and exclusive expression of the terms and conditions of their agreement. No prior dealings between the parties and no usage of the trade shall be relevant to supplement this Agreement, and this Agreement shall supersede all other written and/or oral agreements between CONTRACTOR and Subcontractor.
Other:
Subcontractor will comply with all provisions of E.O. 11426, and related rules, regulations, and orders of the Secretary of Labor. Additionally, *Subcontractor is required to comply with all flow down clauses of the contract between the Prime contractor and the Owner* In the event that the Subcontractor does not comply with any of the requirements set forth in this contract, contract may be cancelled, terminated.

## ARTICLE 12

### INDEMNIFICATION

12.1     SUBCONTRACTOR'S PERFORMANCE. To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless, the Contractor (including the affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees and when required of the Contractor by the Contract Documents, the Owner, the Architect, Architect's consultants, agents and employees from and against claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor that:
  (a)  any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;
  (b)  such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.

12.2     NO LIMITATION UPON LIABILITY. In any and all claims against the Owner, the Architect, Architect's consultants, agents and employees, the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Article 12 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

12.3     ARCHITECT EXLUSION. Except as provided by the Contract Documents, the obligation of the Subcontractor under this Article 12 shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of
  (a)  the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs, or specifications, or
  (b)  the giving of or the failure to give directions or instructions by the Architect, the Architect's Consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

12.4     COMPLIANCE WITH LAWS. The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances, codes and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontractor's Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents.

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AFC5


**DESIGN/BUILD**

**Contract**
**SC-16528-004**

The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures

12.5    PATENTS. Except as otherwise provided by the Contract Documents, the Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Subcontractor's Work. The Subcontractor shall defend all suits for claims for infringement of any patent rights arising out of the Subcontractor's Work, which may be brought against the Contractor or Owner, and shall be liable to the contractor and Owner for all loss, including all costs, expenses, and attorney's fees.

### ARTICLE 13

### INSURANCE

13.1    SUBCONTRACTOR'S INSURANCE. Prior to start of the Subcontractor's Work, the Subcontractor shall procure for the Subcontractor's Work and maintain in force Workers' Compensation Insurance, Employer's Liability Insurance, Comprehensive or Commercial General Liability Insurance on an occurrence basis, and all insurance required of the Contractor under the Contract Documents.
The Contractor, Owner and other parties as designated in the Contract Documents shall be named as additional insured on each of these policies except for Workers' Compensation. In respect to Commercial General Liability Insurance, the additional insured status afforded the Contractor, Owner, or other parties shall be written to include coverage for products and completed operations liability coverage. Additional insured coverage shall apply as primary insurance with respect to any other insurance afforded to Contractor or Owner. Contractor's policies will be non-contributory and excess insurance for all acts or omissions or any other liability of Contractor arising out of subcontractor's work performed for them.
This insurance shall include contractual liability insurance covering the Subcontractor's obligations under Article 12.

MINIMUM LIMITS OF LIABILITY. The Subcontractor's Comprehensive or Commercial Liability Insurance and Comprehensive Automobile Liability Insurance, as required by Paragraph 13.1, shall be written with limits of liability not less than the following: Subcontractor shall maintain, at its own expense, and shall require its subcontractors and suppliers to maintain, at their own expense, during the entire performance period under this Subcontract the following minimum valid and collectible insurance.

In accordance with FAR 28.307-2 and FAR 52.228-5, the following minimum coverage shall apply to this contract and must be presented prior to award:
Workers' Compensation and Employer's Liability: Contractors are required to comply with applicable Federal and State Workers' Compensation and Occupational Disease Statutes. If Occupational Diseases are not compensable under those statutes, they shall be covered under the Employer's Liability section of the insurance policy, except when contract operations are so commingled with a Contractor's commercial operations that it would not be practical to require this coverage. Employer's liability coverage of at least $100,000.00 is required, except in States with exclusive or monopolistic funds that do not permit workers' compensation to be written by private carriers.
General Liability: $500,000.00 per occurrences and without any exclusionary clauses for asbestos that would void the general liability coverage.
Automobile liability: $200,000.00 per person, $500,000.00 per occurrence and $20,000.00 property damage.

SUBCONTRACTOR'S PERFORMANCE  To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless, BES Design/Build LLC (including the affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees and when required of the Contractor by the Contract Documents, the Owner, the Architect, Architect's consultants, agents and employees from and against claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontract that:
Any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;
Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.
The Subcontractor does hereby agree to indemnify and hold BESDB harmless from any and all damages, liability or costs, including reasonable attorneys' fees and costs of defense, arising from the subcontractors negligent acts, errors or omissions in the performance of its services under this agreement or any of its agents, employees, sub-subcontractors, assigns, or any other entity acting for or on behalf of the subcontractor.
In addition, the subcontractor does hereby indemnify and hold BESDB harmless to the same extent and on the same basis as BESDB has indemnified and held the Owner harmless under the terms and conditions of the Prime Contract, but only to the extent of the services to be performed by the subcontractor

NO LIMITATION UPON LIABILITY. In any and all claims against the Owner, the Architect, Architect's consultants, agents and employees, the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation shall not be limited in any way by any limitation on the amount or type of

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**Contract
SC-16528-004**

damages, compensation or benefits payable by or for the Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

ARCHITECT EXCLUSION. Except as provided by the Contract Documents, the obligation of the Subcontractor shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs, or specifications, or the giving of or the failure to give directions or instructions by the Architect, the Architect's Consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

COMPLIANCE WITH LAWS. The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances, codes and regulations (hereinafter collectively referred to as "laws") applicable in the Subcontractor's Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents.
The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

    A. Worker's Compensation and Employers Liability Insurance in an amount not less than $100,000 or as prescribed by applicable law, including insurance covering liability under the Longshoremen's and Harbor Worker's Act and the Jones Act, if applicable.
    B. Comprehensive General Bodily Injury and Broad Form Property Damage Liability Insurance. Such insurance shall include the following coverages: Broad Form Contractual Liability, Personal Injury Liability, Completed Operations, and Products Liability. The limit of liability shall not be less than $1,000,000 combined single limit per occurrence
    C. Automobile Bodily Injury and Property Damage Liability Insurance. Such insurance shall extend to owned, non-owned, and hired automobiles used in the performance of this subcontract. The limit of liability shall not be less than $1,000,000 combined single limit per occurrence.
    D. Pollution Insurance for liability stemming from releases of hazardous substances and pollutants resulting in damage to the environment and property (including environmental impairment, both sudden and gradual).
    E. Other Requirements:
        (i) Named Insured: BFS Design-Build LLC and Owner shall be named as additional insured.
        (ii) Waiver of Subrogation: All policies shall be endorsed to provide that underwriters and insurance companies of Subcontractor shall not have any right of subrogation against CONTRACTOR or Owner or any of its parents, subsidiaries, agents, employees, invitees, servants, subcontractors, insurers, underwriters, and such other parties as they may designate and shall contain cross liability and severability of interests provisions.
        (iii) Primary Insurance: All policies shall be endorsed to provide that coverage provided by Subcontractor's insurance shall always be primary coverage as respects any insurance maintained by CONTRACTOR or Owner.
        (iv)Notice of Cancellation: All policies shall be endorsed to provide that 30 days prior written notice shall be given CONTRACTOR in the event of cancellation or material change in the policies.
        (v) The Subcontractor and its subcontractors at all times shall waive any right of recovery against CONTRACTOR and the Owner or any of their parents, subsidiaries, agents, employees, invitees, servants, subcontractors, insurers, underwriters, and such other parties as they may designate for loss or damage covered by insurance required by this subcontract.
        (vi)Certificates: Subcontractor shall furnish Certificates of insurance evidencing insurance required hereunder before the start of any work and upon request, shall furnish copies of the actual policies. Any failure of Subcontractor to provide the requisite insurance certificates shall not be construed as a waiver of Subcontractor's obligation to do so.

Subcontractor's compliance with the above insurance provisions shall not constitute a limitation of liability or in any way limit or affect Subcontractor's indemnification obligations under this Agreement. CONTRACTOR reserves the right to require additional insurance or coverage amounts for the policies above based on its evaluation of specific project criteria.

13.2    NUMBER OF POLICIES. Comprehensive or Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

13.3    CANCELLATION, RENEWAL OR MODIFICATION. The Subcontractor shall maintain in effect all insurance coverage required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor.
    All insurance policies shall contain a provision that the coverages afforded thereunder shall not be cancelled or not renewed, nor restrictive modifications added, until at least thirty (30) days prior written notice has been given to the Contractor unless otherwise specifically required in the Contract Documents.
    Certificate of Insurance, or certified copies of policies acceptable to the Contractor, shall be filed with the Contractor prior to the commencement of the Subcontractor's Work.
    In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor, or terminate this Agreement.
    The Subcontractor shall continue to carry liability insurance for at least one year after final payment. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and one year thereafter.

Initialed _____

Case 2:20-cv-00957   Document 1-1   Filed 12/02/20   Page 21 of 25 PageID 26

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



Contract
SC-16528-004

13.4   WAIVER OF RIGHTS. The Contractor and Subcontractor waive all rights against each other and the Owner, the Architect, the Architect's consultants and agents or employees of any of them, separate contractors, and all other subcontractors for loss or damage to the extent covered by Builder's Risk or any other property or equipment insurance, except such rights as they may have to the proceeds of such insurance; provided, however, that such waiver shall not extend to the acts of the Architect, the Architect's consultants, and the agents or employees of any of them listed in Paragraph 12.3.

Upon written request of the Subcontractor, the Contractor shall provide the Subcontractor with a copy of the Builder's Risk policy of insurance or any other equipment insurance in force for the Project and procured by the Contractor. The Subcontractor shall satisfy itself as to the existence and extent of such insurance prior to commencement of the Subcontractor's Work.

If the Owner or Contractor have not purchased Builder's Risk insurance for the full insurable values of the Subcontractor's Work less a reasonable deductible, then the Subcontractor may procure such insurance as will protect the interests of the Subcontractor, its subcontractors and their subcontractors in the Work, and, by appropriate Subcontractor Change Order, the cost of such additional insurance shall be reimbursed to the Subcontractor.

If not covered under the Builder's Risk policy of insurance or any other property or equipment insurance required by the Contract Documents, the Subcontractor shall procure and maintain at the Subcontractor's own expense insurance for portions of the Subcontractor's Work stored off the site or in transit, when such portions of the Subcontractor's Work are to be included in an application for payment under Article 5.

13.5   ENDORSEMENT. If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

ARTICLE 14

ARBITRATION

14.1   AGREEMENT TO ARBITRATE. All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, and claims described in Paragraph 14.2, shall be decided by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act.

14.2   EXCEPTIONS. The agreement to arbitrate shall not apply to any claim:
   (a)   of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court or in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto or does not consent to such arbitration; or
   (b)   asserted by the Subcontractor against the Contractor if the Contractor asserts said claim, either in whole or part against the Owner, or asserted by the Owner against the Contractor, when the contract between the Contractor and Owner does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the Contractor and Owner have not subsequently agreed to arbitrate said claim. In either case the parties hereto shall notify each other either before or after demand for arbitration is made.

In any dispute arising over the application of this Paragraph 14.2, the question of arbitrability shall be decided by the appropriate court and not by arbitration.

14.3   INITIAL DISPUTE RESOLUTION. If a dispute arises out of or relates to this Agreement, or the breach thereof, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties shall endeavor to settle the dispute by mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to arbitration. Mediation will be commenced within the time limits for arbitration stipulated in the Contract Documents. The time limits for any subsequent arbitration will be extended for the duration of the mediation process plus ten (10) days or as otherwise provided in the contract Documents. Issues to be mediated are subject to the exceptions in Paragraph 14.2 for arbitration. The location of the mediation shall be the same as the location for arbitration identified in Paragraph 14.4.

The arbitration proceeding shall be conducted according to the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). However, the parties are not required to engage the services of the AAA to administer the arbitration proceeding. In any dispute that is referred to binding arbitration, the prevailing party shall be entitled to recover all costs and attorney's fees incurred in the arbitration proceeding. The final hearing of any arbitration proceeding under this Agreement shall be held in a mutually agreeable location.

14.4   NOTICE OR DEMAND. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the mutually agreed upon Arbitration Association. The demand for arbitration shall be made as required in the Contract Documents or within a reasonable time after written notice of the claim, dispute or other matter in question has been given, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitation, whichever shall first occur. The location of the arbitration proceedings shall be in the State of Alabama.

14.5   AWARD. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

Page 14 of 16                                                Printed On: 03/21/2017  05:04 PM

*(initials)* _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05


**DESIGN/BUILD**

**Contract
SC-16528-004**

14.6    WORK CONTINUATION AND PAYMENT. Unless otherwise agreed in writing, the Subcontractor shall carry on the Work and maintain the Schedule of Work pending arbitration. If the Subcontractor is continuing to perform, the Contractor shall continue to make payments in accordance with this Agreement.

14.7    NO LIMITATION OF RIGHTS OR REMEDIES. Nothing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien laws or payment bonds.

14.8    SAME ARBITRATORS. To the extent not prohibited by their contracts with others, the claims and disputes of the Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding.

### ARTICLE 15

### CONTRACT INTERPRETATION

15.1    INCONSISTENCIES AND OMISSIONS. Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of the Subcontractor to so notify the Contractor in writing within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of said notice, the Contractor shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Contractor's instructions.

15.2    LAW AND EFFECT. This Agreement shall be governed by the law of the state noted in the Architect–Engineer address on the Prime contract.

15.3    SEVERABILITY AND WAIVER. The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

15.4    ATTORNEY'S FEES. Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

15.5    TITLES. The titles given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

15.6    ENTIRE AGREEMENT. This Agreement is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties herein and supersedes all prior negotiations, representations, or agreements, either written or oral.

### ARTICLE 16

### SPECIAL PROVISIONS

16.1    PRECEDENCE. It is understood the work to be performed under this Agreement, including the terms and conditions thereof, is as described in Articles 1 through 16 together with the following Special Provisions, which are intended to complement same. However, in the event of any inconsistency, these Special Provisions shall govern.

    1. Subcontract Agreement, Recitals through Signatures, Pages 1-14
    2. Davis-Bacon Wage Determination (16.4)
    3. Prime Contract Flow-Down Requirements (16.4)
    4. General Terms and Conditions, (Article 2-15)
    5. Statement of Work and Schedule (Article 2-3)
    6. Compensation and Payment (Article 4-5)
    7. Certificate of Release and Indemnity

16.2    SCOPE OF WORK. All work necessary or incidental in strict accordance with and reasonably inferable from the Contract Documents and as more particularly, though not exclusively, specified in the contract documents with the following clarifications:
- Superintendent to be on site at all times.
- Subcontractor to provide daily cleanup and safety inspections
- Comply with all current OSHA and Health Standards for the Construction Industry.
- All workers must have OSHA 10 hour certification and attend the VA Infectious Disease Training
- Comply with all local, State and Federal Environmental Requirements.
- Superintendent/Project Manager to attend all coordination meetings when performing work onsite.
- Provide Daily Reports and Weekly Work Schedule.
- SCOPE. See Inclusions/Exclusions/Descriptions.

Initialed _____

DocuSign Envelope ID: D5524746-35DB-458D-B516-03B24F58AF05



**DESIGN/BUILD**

**Contract**
**SC-16528-004**

16.3    COMMON TEMPORARY SERVICES. The following "Project" common temporary services and/or facilities are for the use of all project personnel and shall be furnished as herein below noted:
By this Subcontractor; including but not limited to: Phones.
By others; water, electricity. Water and electricity to be provided at the facility, no remote capabilities (i.e., generators) to be provided.

16.4    OTHER SPECIAL PROVISIONS.

1. Certified Payroll weekly
Certified Payroll Instructions:
Subcontractor is to provide certified payroll copies to the Contractor on a weekly basis beginning with the first day worked and shall continue until the Subcontractors work is complete. Subcontractor shall distribute to the following:
•    1 email copy of certified payroll and invoice to jbranch@besdesignbuild.com; ataperu@besdesignbuild.com
•    Pay Application can be emailed to: accountspayable@besdesignbuild.com
•    1 original with the invoice to the billing location listed below:
            BES Design/Build LLC
            Attn: Accounts Payable
            PO Box 2263
            Fairhope, AL 36533

If the Subcontractor fails to provide all certified payrolls and statement of compliance as required under this subcontracts Section 1 wage determination clause, Contractor shall withhold payments to the Subcontractor until such violations have been corrected. Certified Payroll and Statement of Compliance of certified payroll can be submitted on the standard Government WH-347 Form which can be found at the US Department of Labor Website.

1. All submittals are to be received by BES Design/Build LLC, within Ten (10) working days of receipt of a Notice to Proceed.

2. Cancellation clause on the Certificate of Insurance shall read: "Should any of the above described policies be cancelled or have any material changes adversely affecting The BES Design/Build LLC, interest before the expiration date thereof, the issuing company will mail 30 days written notice to the certificate holder" The BES Design/Build, LLC will be named as additional insured. This certificate should be job specific.

16.5    CONTRACT DOCUMENTS
1. Scope of Work Proposal
2. Project RFP
3. Standard Form 1413
4. Subcontractor Safety Requirements Letter
5. Activity Hazard Analysis Form

*The terms and conditions of this contract are not to be changed either manual or electronic. Any changes to the official printed language of this contract shall void the entire agreement.*
*Attachments are for reference only and do not release the subcontractor noted in this contract from the requirements of this contract or the requirements of the flow down clauses of the prime contract.*
IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, the day and year first above written

BES Design Build, LLC
766 Middle St.
Fairhope, Alabama 36532

ThyssenKrupp Elevator Americas (Marietta, GA)
3905 Chastain Meadows Parkway, Suite 100
Marietta, Georgia  30066

SIGNATURE                                DATE

DocuSigned by:

SIGNATURE                        1/5/2018
                                 DATE

Terri Todd
Contract Analyst

*The Attached Amendment is Hereby Made Part of This Agreement*

* Please see attached amendment *

DocuSign Envelope ID: 3E6B83CC-AD81-437C-81F1-643015B616E4

**ThyssenKrupp Elevator**
Ft. Myers Federal Building and Courthouse 250MOD


thyssenkrupp

AMENDMENT NO. 1

This Amendment No.1 shall be made a part of this Agreement, and in the event of conflict with other articles, terms, conditions or contract documents, this Amendment No.1 shall be final.  The Work Order, dated June 19, 2016 shall be made part of this agreement and shall govern in the event of conflict.  Subcontractor shall not be liable for indirect, special, incidental, exemplary or consequential damages.

<u>CONTRACT</u>

3.3  Amend so a schedule shall be agreed to in writing by both parties before becoming effective.

5.2 - 5.4 Material will be ordered once Agreement is fully executed. Contractor shall furnish Subcontractor with sixty percent (60%) of the contract value for project management, permits, engineering and shop drawings, submittals, drilling mobilization (if required), material procurement upon day of delivery of equipment to thyssenkrupp Distribution Center at 7433 Emerald Dunes Drive Suite 200 Orlando, FL 32822. The remaining forty percent (40%) will be due upon completion and prior to elevator turnover to Contractor. Receipt of payment is required prior to mobilization of labor.  Subcontractor shall retain exclusive ownership and control over all equipment installed pursuant to this Agreement until such time as Contractor has paid Subcontractor one hundred percent (100%) of the full contract value, including outstanding change orders. Purchaser agrees to waive any and all claims to the turnover and/or use of that equipment until such time as those amounts are paid in full.

6.1  Amend so changes or modifications shall be agreed upon in writing, including Subcontract prices and schedule adjustment, prior to the commencement of work covered by changes or modifications.

6.7  Amend so Subcontractor's liability for liquidated damages is limited to delays due to Contractor's negligence.

7.1  Amend so any documents not furnished hereunder, or in a future change order, shall not be binding upon Subcontractor until such time that Subcontractor is furnished with same and specifically accepts in writing.

7.3  Amend so Contractor shall supply Subcontractor with suitable onsite storage.

8.10  Amend so that Subcontractor shall not be responsible for re-inspection fees should the elevator fail inspection due to no fault of Subcontractor.

9.10  Amend so that Guarantee/Warranty covering parts only shall commence upon acceptance of Subcontractor's work by Contractor, and shall continue for a period of one (1) year, provided that a manufacturer approved preventative maintenance program is in effect during the Guarantee/Warranty period.

10.1.2  Amend so in the event of termination for any reason, Contractor agrees to pay Subcontractor the proportional contract value of work performed including contract value of materials in process of fabrication, in transit, stored at jobsite or in Subcontractor's possession.  Contractor agrees to limit possession to work and materials previously paid for by Contractor to Subcontractor.

10.6  Amend so that if Owner/Contractor materially suspend/delay Subcontractor's work, prior to commencing work again, Subcontractor reserves the right to survey its work (including materials stored at jobsite), and based on Subcontractor's findings Contractor shall execute a change order.  Substantial delays to include increases in Subcontractor's wage rates based on its agreement with the International Union of Elevator Constructors (IUEC), increases in material costs, as well as remobilization costs incurred by Subcontractor.

12.1 and 13.1  Amend so indemnity, defend and hold harmless is limited to Subcontractor's acts and actions and in no way to include the acts, actions, omissions, neglects or bare allegations of a party indemnified hereunder.  Amend so Subcontractor shall not be liable for loss of use.

13.1  Contractor, Owner, and others as required by written contract, shall be added to Subcontractor's general liability insurance policy as an additional insured.  Such additional insured coverage shall only apply to the extent any damages covered by the policy are determined to be caused by Subcontractor's acts, actions, omissions or neglects and not to the extent caused by the additional insured's own acts, actions, omissions, or neglects or for bare allegations. Amend so Subcontractor's policy is primary over and above any valid and collectible insurance available only regarding work performed by Subcontractor and only arising out of the negligence of Subcontractor at the site.  Amend so products and completed operations coverage, as part of the general liability aggregate, shall be maintained for one (1) year following final acceptance of Subcontractor's work.  Delete reference to Prime Contract.  Delete requirement for Pollution Insurance.  Amend so the waiver of subrogation shall be limited to the extent any claim is caused by Subcontractor.  Amend so that copies or certified copies of Subcontractor's insurance policies will not be provided at any time.

DocuSign Envelope ID: 3E6B83CC-AD81-437C-81F1-643015B616E4

**ThyssenKrupp Elevator**
Ft. Myers Federal Building and Courthouse 250MOD


thyssenkrupp

14.1  Delete requirement for Arbitration. Amend so Subcontractor retains all rights and remedies granted to it by operation of law, or in equity.  Amend so that the prevailing party shall be reimbursed for all costs and reasonable attorney's fees.

**BES DESIGN BUILD, LLC**

Signature

Joseph L Banach III
Name

Managing Partner
Title

**THYSSENKRUPP ELEVATOR CORP.**

*Amy Gill*
Signature

Amy Gill
Name

Modernization Representative
Title

Page 2 of 2

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF THYSSENKRUPP ELEVATOR CORP.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

YUSUF E. HAIDERMOTA, ESQ., TEL (813) 229-0900
P.O. BOX 800, TAMPA, FL 33601

## DEFENDANTS

BES DESIGN/BUILD, LLC AND AEGIS SECURITY INSURANCE COPANY

County of Residence of First Listed Defendant  BALDWIN COUNTY, AL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[x] 1  U.S. Government
Plaintiff

[ ] 2  U.S. Government
Defendant

[ ] 3  Federal Question
*(U.S. Government Not a Party)*

[ ] 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [x] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[x] 1  Original Proceeding
[ ] 2  Removed from State Court
[ ] 3  Remanded from Appellate Court
[ ] 4  Reinstated or Reopened
[ ] 5  Transferred from Another District *(specify)*
[ ] 6  Multidistrict Litigation - Transfer
[ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
40 U.S.C. 3131-3133

Brief description of cause:
MILLER ACT - BREACH OF CONTRACT

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
77,370.40

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  12/2/2020

SIGNATURE OF ATTORNEY OF RECORD
YUSUF E. HAIDERMOTA, ESQ.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida [▼]

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF THYSSENKRUPP ELEVATOR CORPORATION, <br><br> _____<br> *Plaintiff(s)* <br><br> v. <br><br> BES DESIGN/BUILD, LLC AND AEGIS SECURITY INSURANCE COMPANY, <br><br> _____<br> *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> BES DESIGN/BUILD, LLC
> C/O NRAI SERVICES, INC., REGISTERED AGENT
> 1200 SOUTH PINE ISLAND ROAD
> PLANTATION, FL 33324

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> YUSUF E. HAIDERMOTA, ESQ.
> KASS SHULER, P.A.
> P.O. BOX 800
> TAMPA, FL 33601
> EMAIL: YHAIDERMOTA@KASSLAW.COM

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                       *Server's signature*

                                          _____
                                                       *Printed name and title*

                                          _____
                                                       *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida  ▼

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF THYSSENKRUPP ELEVATOR CORPORATION, <br><br> *Plaintiff(s)* <br><br> v. <br><br> BES DESIGN/BUILD, LLC AND AEGIS SECURITY INSURANCE COMPANY, <br><br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> AEGIS SECURITY INSURANCE COMPANY
> C/O FLORIDA CHIEF FINANCIAL OFFICER, AS REGISTERED AGENT
> 200 EAST GAINES STREET
> TALLAHASSEE, FL 32399

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> YUSUF E. HAIDERMOTA, ESQ.
> KASS SHULER, P.A.
> P.O. BOX 800
> TAMPA, FL 33601
> EMAIL: YHAIDERMOTA@KASSLAW.COM

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: